UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS TYRRELL,

    Plaintiff,                                              Civil Action No. 17-CV-12637

vs.                                                    HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**

        This matter is presently before the Court on plaintiff's motion for summary judgment [docket entry 10]. Defendant has not responded to this motion or filed a summary judgment motion of her own. Rather, after plaintiff filed his motion for summary judgment, the parties filed a stipulation in which they agree "that the Court should enter an order remanding the above-captioned matter" with instructions that "the ALJ . . . conduct a new hearing and issue a new decision" [docket entry 13]. The parties' stipulation does not indicate why a new hearing and decision are necessary. For the reason explained below, the Court agrees that defendant's final decision in this matter is not supported by substantial evidence and that the matter must be remanded so that defendant may correct a number of errors.

        Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying his applications for Supplemental Security Income and Social Security disability insurance benefits. An Administrative Law Judge ("ALJ") held a hearing in October 2015 (Tr. 667-702) and issued a decision denying benefits in June 2016 (Tr. 76-90). This became

defendant's final decision in July 2017 when the Appeals Council denied plaintiff's request for review (Tr. 1-4).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was 44 years old. He has a high school education (Tr. 675) and work experience as a maintenance repairer (Tr. 696). Plaintiff claims he has been disabled since February 2013 due to back pain (Tr. 784, 813). The ALJ found that plaintiff's severe impairments are "congenital spina bifida; disorder of the lumbar spine, status post spinal fusion; and impingement syndrome of the left shoulder" (Tr. 81). He found that plaintiff cannot perform his past work, but that he has the residual functional capacity ("RFC") to perform a limited

range of unskilled, sedentary work (Tr. 81-82).[1]  A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could work as an administrative support clerk, surveillance system monitor, or sorter (Tr. 89).  The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and concluded that plaintiff is not disabled (Tr. 89-90).

Having reviewed the administrative record and the parties' briefs, the Court finds that the ALJ's decision in this matter is not supported by substantial evidence for the following reasons. First, the ALJ failed to adequately consider the side effects of plaintiff's medications.  During the

---

[1] Specifically, the ALJ found that plaintiff can

> perform sedentary work . . . except the claimant is restricted from lifting more than 7 pounds frequently and occasionally with the bilateral upper extremities.  He is also limited to no more than 30 minutes of standing or walking at a time and no more than 4 hours of walking or 4 hours of standing in an 8-hour workday with the need for an assistive device when walking.  The claimant can sit for a total of 2 hours at a time and up to a total of 7 hours in an 8-hour workday. He can push/pull to a maximum of 5 pounds frequently using the bilateral upper extremities but up to 20 pounds on an occasional basis when using the right dominant hand.  The claimant is restricted to only occasional ability to climb ramps/stairs and balance but he has no ability to climb ladders, ropes, or scaffolds, as well as no ability to crawl or crouch with only incidental stooping or kneeling allowed. The claimant has manipulative limitations with no ability to perform overhead reaching on the left and only occasional ability to reach in all other directions using the . . . non-dominant left upper extremity. All other manipulative maneuvers on the left and on the right are unlimited.  The claimant is also unlimited in visual and communicative ability.  The claimant has environmental limitations that preclude any exposure to unprotected heights and only occasional exposure to fast moving parts or operating a motor vehicle.  The claimant requires work that allows the claimant to be off-task 10% of the workday.

(Tr. 82).

relevant time frame, plaintiff was prescribed a number of medications including Percocet, Robaxin, Neurontin (Gabapentin), Oxycodone, Morphine, Valium, Tizanidine, and Lidocaine patch (Tr. 17, 25, 44, 103, 240, 1201, 1228, 1380, 1510), some of which have known side effects including dizziness and drowsiness. Plaintiff testified that "[w]atching TV is kind of tough with the medications I'm on" because "[i]n a half-hour span, I'll nod out a couple of different times" (Tr. 692). On his function report, plaintiff indicated that certain of his medications cause him dizziness, drowsiness, and blurred vision (Tr. 829).

The ALJ neglected to develop the record as to this medically and vocationally significant issue. The ALJ asked plaintiff no questions about his medications or his medication side effects. In his written decision, the ALJ acknowledged that plaintiff "tries to watch some television but he said that this is hard because his medications make it hard to focus" (Tr. 83), but he failed to acknowledge plaintiff's testimony that his medications cause him to fall asleep "a couple of different times" during a 30-minute period. The ALJ apparently believed that plaintiff experiences some medication side effects, as he found that plaintiff's "medication regimen . . . could reasonably keep the claimant off-task up to 10% of the workday" (Tr. 87). However, the ALJ did not make any findings as to what medications plaintiff has taken since the alleged onset date (and at what dosage levels) or which side effects he experiences. Nor did the ALJ explain how he arrived at this percentage figure.

The Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical

questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must (1) determine which medications plaintiff was taking during the relevant time period, and at what dosages, (2) make findings as to the nature and severity of these medications' side effects and revise plaintiff's RFC accordingly, (3) explain his reasoning for translating the impact of plaintiff's medication side effects into a particular percentage figure, and (4) incorporate these findings in proper hypothetical questions to the VE to determine whether work exists in significant numbers that can be performed by a person such as plaintiff experiencing such side effects.

Second, the decision in this matter is flawed, and remand is required, because the ALJ failed to explain adequately why he rejected plaintiff's testimony concerning his need to lie down periodically during the day. Plaintiff testified that due to his back and leg pain, he must change position frequently, moving from his bed to a chair to a couch, and that on a usual day he lies down three times for 45-60 minutes each time (Tr. 692). Although the ALJ did not find plaintiff to lack credibility, he concluded that "the record fails to show any complaints that would justify the need to lie down during the day" (Tr. 87). The ALJ then found that "the claimant's complaints of pain could reasonably distract the claimant up to 10% of the workday" (Tr. 88).

The ALJ's statement that "the record fails to show any complaints that would justify the need to lie down during the day" defies belief. The ALJ himself noted that "the claimant has a well-supported history of discogenic syndrome, lumbar radiculopathy, cervical myelopathy with cervical radiculopathy, left hip bursitis, thoracic compression fracture, and spina bifida, which have required ongoing treatment" (Tr. 83). The ALJ then provided a rather detailed (4-page, single-spaced) summary of this medical history (Tr. 83-87). The 2,030-page record in this case documents

5

plaintiff's three spinal surgeries (two lumbar fusions and one cervical laminectomy); regular and frequent visits to a pain clinic for treatment (including epidural injections, zhizotomies, nerve root block, back bracing, a TENS unit, and various medications) for back, leg, and neck pain; a course of physical therapy; and numerous visits to the ER for back and leg pain and numbness. Throughout the medical records plaintiff's back and leg pain level is characterized as "significant," "severe," and "acute" (e.g., Tr. 65, 103, 969, 1218, 1268, 1318) and plaintiff has consistently reported pain levels at 6 to 10 on a scale of 1 to 10 (e.g., Tr. 1361, 1365, 1380, 1382, 1398, 1400, 1532, 1573, 1600). The objective evidence (MRIs, CTs, x-rays) of bulging discs, herniated discs, torn discs, and other spinal deformities is abundant.

In light of this evidence, the ALJ plainly erred in finding that "the record fails to show any complaints that would justify the need to lie down during the day" (Tr. 87). On remand, the ALJ must reconsider this finding and either accept plaintiff's testimony regarding his need to lie down or provide a reasoned basis for rejecting it. To the extent the ALJ finds that plaintiff needs to lie down, he must quantify the need and revise his RFC assessment of plaintiff and his hypothetical questions to the VE accordingly. The ALJ must also explain his reasoning for translating the nature and severity of plaintiff's pain into a particular percentage of the workday during which plaintiff would be "off task" or "distracted."

Third, the decision in this matter is not supported by substantial evidence and remand is required because the ALJ did not include in his RFC assessment and in his hypothetical question to the VE all of the findings he made regarding plaintiff being "off task." One aspect of the ALJ's RFC assessment is that plaintiff "requires work that allows [him] to be off-task 10% of the workday" (Tr. 82), and this is the figure the ALJ included in his hypothetical question to the VE (Tr. 699).

6

However, it appears that the ALJ found that plaintiff's medication side effects "could reasonably keep [him] off-task up to 10% of the workday" and, *in addition*, that his "complaints of pain could reasonably distract [him] up to 10% of the workday" (Tr. 87-88). These percentage figures (which, as noted above, are themselves not adequately explained) together come to 20%, not 10%. On remand, the ALJ must provide a reasoned explanation for both of these percentage figures and, if he decides to stand by these figures, combine them in a revised RFC assessment and in revised hypothetical questions to the VE.

Fourth, the decision in this matter is not supported by substantial evidence and remand is required because the ALJ did not include in his RFC assessment and in his hypothetical questions to the VE all of the findings he made concerning plaintiff's need to use a cane. One aspect of the ALJ's RFC assessment is that plaintiff "need[s] . . . an assistive device when walking" (Tr. 82), and this need was included in the ALJ's hypothetical question to the VE (Tr. 696). However, in his written decision the ALJ found that plaintiff also "needs a cane for balance and his difficulties with extended standing" and that plaintiff's "need of a cane for balance is supported by his testimony and by the treatment records, which reflect ongoing and significant complaints of pain" (Tr. 87). If, as the ALJ found, plaintiff needs to use a cane while standing and if, as the ALJ also found, he is "capable of sitting up to two hours at a time for seven hours per day," it would appear that for at least one hour during the workday plaintiff would have to work while standing and using one hand, as the other hand would be occupied holding the cane. On remand, the ALJ must revise his RFC assessment to reflect that plaintiff needs a cane for balance and support while walking and standing and include this restriction in revised hypothetical questions to the VE.

Fifth, remand is required because substantial evidence does not support the ALJ's

finding that plaintiff is "capable of standing or walking up to one-half of an hour at a time or four hours per day" (Tr. 82, 696). The ALJ does not explain how he reached this conclusion, but it seems to be contradicted by the opinion of plaintiff's treating physicians who, in supporting plaintiff's applications for disability parking placards, have repeatedly certified that his condition "severely limits [his] ability to walk" (Tr. 217, 1268, 1771). The ALJ did not acknowledge these certifications in his decision and, in a record this voluminous, it is possible he overlooked them. On remand, the ALJ must reconsider his findings regarding plaintiff's ability to walk in light of this evidence and, as necessary, revise his RFC assessment and his hypothetical questions to the VE.

Sixth, remand is required because substantial evidence does not support the ALJ's finding that plaintiff "can sit for a total of 2 hours at a time and up to a total of 7 hours in an 8-hour workday" (Tr. 82). These numbers appear to be a slight modification of those provided by a non-examining consultant, Dr. Kwock, who opined in September 2015 that plaintiff can sit for four hours at a time and up to seven hours in an eight-hour workday (Tr. 1352). Confusingly, the ALJ gave Dr. Kwock's opinion "significant weight in most parts but lesser weight in other parts," without explaining which parts he gave which weight (Tr. 87). As the ALJ noted, Dr. Kwock's opinions deserved "lesser weight" because he did not examine plaintiff, he did not have the benefit of plaintiff's testimony, and he failed to consider plaintiff's medication side effects (Tr. 87). But in fact Dr. Kwock's opinions deserve no weight because, in addition to these reasons, he apparently was unaware that plaintiff needs a cane (Tr. 1352) and, most significantly, that as of September 2015 plaintiff had undergone two, not one, spinal fusions. On the last page of his report, Dr. Kwock wrote:

> s/p [status post] lumbar spine fusion

> The claimant had not offered any further evidence to document his course after *the* surgery in either the form of physical examinations or objective testing to corroborate a linear clinical course that he might have had. There is no evidence to suggest that his course was not that typically expected from *the* surgery and that his functionality is not that typically expected after *the* surgery.

(Tr. 1359) (emphasis added). Dr. Kwock's references to "the" surgery suggests that he was not familiar with all of plaintiff's medical records, as plaintiff had had two spinal fusions by the time of Dr. Kwock's September 2015 report – the first in March 2013 and the second in January 2015 (Tr. 204, 1599).[2] It is also unclear what Dr. Kwock meant by asserting that "[t]here is no evidence to suggest that his course was not that typically expected from the surgery and that his functionality is not that typically expected after the surgery," as he does not indicate what course or functionality are typically expected following spinal fusion surgery. In any event, the issue in this case is not what is "typically expected" but what plaintiff's condition actually is and whether works exists that he can perform.

In short, the ALJ's finding that plaintiff can sit for two hours at a time and up to seven hours in an eight-hour workday cannot rely for support, even in part, on Dr. Kwock's opinion, which itself is unreliable because it is based on a review of only a portion of the record. Further, the ALJ's finding is contradicted by plaintiff's testimony, which the ALJ neither accepted nor rejected, that he can sit for only 45 minutes (Tr. 692, 1600). On remand, the ALJ must reevaluate the evidence and, as necessary, revise his RFC assessment and his hypothetical questions to the VE. If the ALJ chooses to elicit a medical consultant's opinion as to plaintiff's physical abilities, he must supply the

---

[2] And, as noted above, plaintiff later had a third spinal surgery (revision laminectomy at C4-5) in January 2016 (Tr. 295, 1593).

consultant with the entire record.[3]

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings as specified above. This is a sentence four remand under § 405(g).

                                                                s/Bernard A. Friedman
Dated: January 8, 2018                   BERNARD A. FRIEDMAN
     Detroit, Michigan              SENIOR UNITED STATES DISTRICT JUDGE

---

[3] It is up to the ALJ on remand whether to obtain such an opinion. However, as the goal is to determine the extent to which plaintiff's impairments affect his ability to do such things as sit, stand, and walk, and to lift and carry weight, and whether he needs to lie down during the day and whether he suffers from medication side effects, it is a bit counterintuitive that the opinion would be obtained from a physician who has never examined him and must form an opinion based on a review of years of medical records. Common sense would seem to dictate that medical opinions of this nature be obtained from the physicians who have treated plaintiff extensively and are familiar with his condition. If the ALJ elects to obtain an opinion from a non-treating consultant such as Dr. Kwock, and not from plaintiff's treating physicians, he must explain his reasons for doing so.

CERTIFICATE OF SERVICE

Copies of the Order were served upon attorneys of records on January 3, 2018, by electronic and/or ordinary mail.

s/Teresa McGovern<br>
Deputy Clerk